UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAUI INDUSTRIAL LOAN & FINANCE COMPANY,<br><br>    Debtor. | Case No. 10-00235<br>Chapter 7 |
| DANE S. FIELD,<br><br>    Plaintiff,<br><br> vs.<br><br>THE TRUST ESTATE OF ROSE KEPOIKAI, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-90126<br><br><br><br><br><br>Re: Docket No. 86, 182, 185, 186, 187 |
| DANE S. FIELD,<br><br>    Plaintiff,<br><br> vs.<br><br>JONATHAN STARR,<br><br>    Defendant. | Adv. Pro. No. 10-90130<br><br><br><br><br>Re: Docket No. 10, 27 |

| | |
|---|---|
| DANE S. FIELD, | Adv. Pro. No. 10-90137 |
| Plaintiff, | |
| vs. | |
| THOMAS N. DECOITE, et al., | Re: Docket No. 28, 30 |
| Defendants. | |
| DANE S. FIELD, | Adv. Pro. No. 10-90131 |
| Plaintiff, | |
| vs. | |
| ALEXANDER G. KOST, et al., | Re: Docket No. 26, 31 |
| Defendants. | |

# AMENDED MEMORANDUM OF DECISION ON STATUTE OF LIMITATIONS ISSUES

On April 1, 2011, a hearing was held on motions to dismiss by certain defendants and countermotions for summary judgment by the plaintiff trustee. The motions primarily concern whether the trustee is entitled to recover alleged fraudulent transfers made more than four years before the bankruptcy filing. I took the matter under advisement and agreed to accept supplemental memoranda on one issue. Those memoranda have been filed and the issues are ready for decision.

2

1. The parties raise various procedural objections to each others' filings. With two exceptions, none of those issues are substantial. The exceptions are:

 a. The trustee's countermotion for summary judgment argues, not only that his claims are timely, but also that the plea agreement of the debtor's principal conclusively establishes that the debtor operated a Ponzi scheme and certain other issues. See In re Slatkin, 525 F.3d 805, 811-12 (9th Cir. 2008). The basic purpose of the April 1 hearing was to address the timeliness of the trustee's claims and not other issues. The briefing schedule order (docket no. 129) provides that any countermotions by the trustee in response to the motion to dismiss would be heard on April 1. A countermotion may raise "only the same specific issues, claim, or defenses presented in the original motion," LBR 9013-1(d)(1). The trustee argues that he was entitled to raise the Slatkin argument because one set of moving defendants briefly addressed the plea agreement in their papers. In order to ensure adequate briefing, however, I have set a separate hearing date on these arguments.

 b. For similar reasons, I will not consider the arguments of the Mancini/Rowland defendants that they are not "initial transferees" or are otherwise not liable on the merits.

2. The complaint satisfies the particularity requirement of Fed. R. Civ.

U.S. Bankruptcy Court - Hawaii #10-90137 Dkt # 44 Filed 04/25/11 Page 3 of 11

P. 9(b), Fed. R. Bankr. P. 7009. The complaint contains more information than the rule drafters require. See Fed. R. Civ. P. 84 and Official Form 21. The trustee's claims are "plausible" within the meaning of Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

    3. The defendants in the Kepoikai Trust adversary proceeding argue that, because the state court entered orders approving the accounts of the trustee of that trust, the Rooker-Feldman doctrine bars the trustee's claims. Recent Supreme Court and Ninth Circuit cases have eviscerated the doctrine, particularly in bankruptcy.

        a. In 2005, the Supreme Court held that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus., 544 U.S. 280, 284 (2005); see also Lance v. Dennis, 546 U.S. 459, 468 (2006) (Stevens, J., dissenting) ("[I]n Justice GINSBURG's lucid opinion in Exxon Mobil Corp. v. Saudi Basic Industries Corp., the Court finally interred the so-called 'Rooker- Feldman doctrine.' And today, the Court quite properly disapproves of the District Court's resuscitation of a doctrine that

4

has produced nothing but mischief for 23 years.") Neither the trustee nor the debtor are "state-court losers" because they were not parties to the state court proceedings. Lance v. Dennis, 546 U.S. at 465 (2006) (holding the doctrine does not apply to parties who were not party to the state court case). Further, the trustee does not seek "review" or "rejection" of the judgment identifying the beneficiaries of the trust and fixing their shares of the trust.

   b. The Ninth Circuit has repeatedly observed that doctrine has even less vitality in bankruptcy than in district court.

> Application of the Rooker-Feldman doctrine in bankruptcy is limited by the separate jurisdictional statutes that govern federal bankruptcy law. The Rooker-Feldman doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case.

In re Sasson, 424 F.3d 864, 871 (9th Cir. 2005) (internal citations omitted).

> In apparent contradiction to the Rooker-Feldman theory, bankruptcy courts are empowered to avoid state judgments, see, e.g., 11 U.S.C. §§ 544, 547, 548, 549; to modify them, see, e.g., 11 U.S.C. §§ 1129, 1325; and to discharge them, see, e.g., 11 U.S.C. §§ 727, 1141, 1328. By statute, a post-petition state judgment is not binding on the bankruptcy court to establish the amount of a debt for bankruptcy purposes. See 11 U.S.C. § 109(e); Slack v. Wilshire Ins. Co. (In re Slack), 187 F.3d 1070, 1073 (9th Cir.1999), as amended 1999 WL 694990 (Sept. 9, 1999). Thus, final judgments in state courts are not necessarily preclusive in United States bankruptcy courts.

In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc). The Rooker-Feldman

U.S. Bankruptcy Court - Hawaii  #10-90137  Dkt # 44  Filed 04/25/11  Page 5 of 11

doctrine does not apply to avoidance actions under sections 544 and 548. See In re Yellowstone Mountain Club, LLC, 436 B.R. 598, 667 (Bankr. D. Mont. 2010) ("The Rooker-Feldman doctrine is not applicable, however, because YCLT is seeking to set aside fraudulent transfers under §§ 544 and 548."); In re Martyak, 432 B.R. 25, 31 (Bankr. N.D.N.Y. 2010) ("The bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state court judgments under certain circumstances. Since Rooker-Feldman does not apply when a federal statute specifically authorizes a lower federal court to vitiate a state court judgment, the doctrine is inapplicable to Debtor's avoidance action asserted under Code section 548.").

4. The defendants in the Kost adversary proceeding argue that the trustee lacks standing under the doctrine of in pari delicto because he is seeking to redress the injuries of third party investors who are not parties in interest. The in pari delicto defense is inapplicable when a trustee brings an action under sections 544(b) and 548. See In re Norvergence, Inc., 405 B.R. 709, 742 (Bankr. D.N.J. 2009); In re Fuzion Technologies Group, Inc., 332 B.R. 225, 232 (Bankr. S.D. Fla. 2005); In re Personal and Business Insurance Agency, 334 F.3d 239, 245-46 (3d Cir. 2003).

5. The trustee cannot avoid, under section 548 of the Bankruptcy Code,

6

transfers made more than two years prior to the petition date. I find the analysis of In re Lyon, 360 B.R. 749, 750 (Bankr. E.D. N.C. 2007), more persuasive than that of In re Stanwick Financial Services Corp., 291 B.R. 25, 28 (Bankr. D. Conn. 2003). The two year period is a substantive element of the trustee's claim, not a statute of limitations. Even if it were analogous to a statute of limitations, the equitable tolling doctrine is really a rule of statutory interpretation:

> It is hornbook law that limitations periods are "customarily subject to 'equitable tolling,'" *unless tolling would be "inconsistent with the text of the relevant statute*." Congress must be presumed to draft limitations periods in light of this background principle. That is doubly true when it is enacting limitations periods to be applied by bankruptcy courts, which are courts of equity and "appl[y] the principles and rules of equity jurisprudence."

Young v. United States, 535 U.S. 43, 49-50 (2002) (citations omitted) (emphasis added). Congress wrote the two year period as a fixed period. The text does not support an inference that Congress intended to permit discretionary extension of the time period.[1]

Because all of the transfers mentioned in the complaint occurred more than two years before the petition date, count 1 will be dismissed.

---

[1] I do not accept the trustee's arguments that the relevant time periods were tolled based on the "adverse domination" doctrine. That doctrine recognizes that a corporation is unlikely to sue directors and officers for misconduct while those directors and officers are in control, and tolls the limitations period accordingly. The doctrine does not apply because (1) the defendants were never in control of or affiliated with the debtor and (2) the claims which the trustee asserts never belonged to the debtor.

7

U.S. Bankruptcy Court - Hawaii   #10-90137   Dkt # 44   Filed  04/25/11   Page 7 of 11

6. The trustee also seeks to avoid the transfers under section 544(b) of the Bankruptcy Code and Hawaii's Uniform Fraudulent Transfers Act, Haw. Rev. Stat. ch. 651C. The moving defendants argue that the trustee's action is untimely under Haw. Rev. Stat. § 651C-9(1), because all of the transfers occurred more than four years before the bankruptcy and could reasonably have been discovered more than one year before the bankruptcy. The trustee argues that the one year period begins once the fraudulent nature of the transfer, and not just the fact of the transfer, was or could reasonably have been discovered. The trustee also argues that a reasonable creditor could not have discovered many of the transfers themselves.

    a. Most courts interpreting versions of the Uniform Fraudulent Transfers Act like Hawaii's have held that the one year period does not begin to run until the fraudulent nature of the transfer is discovered or reasonably discoverable. Astra USA, Inc., v. Bildman, 375 Fed. Appx. 129, 2010 WL 1731815 (2d Cir. 2010); Fidelity Nat'l Title Ins. Co. v. Howard Savings Bank, 436 F.2d 836 (7th Cir. 2006); Hu v. Wang, 2009 WL 1919367 (Cal. App. 4th Dist. 2009); Roost v. Kern, 2006 WL 4528530 (Bankr. D. Or. 2006)[2]; In re G-I

---

[2] The Roost decision says that the one year period began to run when "Plaintiff learned of the transfer on March 22, 2004, the date of the meeting of creditors." Earlier in the opinion, the court stated that, at the meeting of creditors, the debtor testified that she transferred the property

8

U.S. Bankruptcy Court - Hawaii   #10-90137   Dkt # 44   Filed  04/25/11   Page 8 of 11

Holdings, Inc., 313 B.R. 612, 636-40 (Bankr. D.N.J. 2004); The Norwood Group, Inc., v. Phillips, 149 N.H. 722, 828 A.3d 300 (N.H. 2003); Johnston v. Crook, 93 S.W.3d 263 (Tex. App. 2002); Frietag v. McGhie, 133 Wash. 2d 816, 821-24, 947 P.2d 1186, 1189-90 (Wash. 1997); Selvage v. J.J. Johnson & Assoc., 910 P.2d 1252 (Utah App. 1996). Some courts read the statute literally and hold that the period begins to run as soon as a creditor discovered or could reasonably have discovered the transfer, even if no one knew the transfer was fraudulent. In re Ewbank, 359 B.R. 807, 810 (Bankr. D.N.M. 2007); In re Hill, 2004 WL 5694988 (Bankr. M.D. Fla. 2004); Cadle Co. v. Wilson, 136 S.W.2d 345, 353 (Tex. App. 2004); Pereyron v. Leon Constantin Cons., Inc., 2004 WL 1043724 (Del. Ch. 2004) (unpublished); Gulf Ins. Co. v. Clark, 304 Mont. 264, 269, 20 P.3d 780, 783 (Mont. 2001). I predict that the Hawaii state courts would follow the majority rule which is more protective of innocent creditors.[3]

---

to put it out of the reach of her then husband. The deed effecting the transfer was recorded twelve years earlier. Read in its entirety, the Roost decision holds that the one year period begins to run upon discovery of the fraudulent nature of the transfer. Similarly, Salisbury v. Majesky, 352 Ill. App. 3d 1188; 817 N.E.2d 1219, 288 Ill. Dec. 569 (Ill. App. 2004), contains some language favoring the defendants' argument, but as a whole supports the trustee's position.

[3] Cases that simply quote the statutory language without analyzing or applying it are not helpful. Marwil v. Cluff, 2007 WL 2608845 (S.D. Ind. 2007); In re National Audit Defense Network, 367 B.R. 207, 219 (Bankr. D. Nev. 2007); Kent v. White, 279 Ga. App. 563, 631 S.E.2d 782 (Ga. App. 2006); In re Sun Valley Products, Inc., 328 B.R. 147 (Bankr. D.N.D. 2005); In re C.F. Foods, L.P., 280 B.R. 103 (Bankr. E.D. Pa. 2002); In re Roosevelt, 176 B.R. 200, 205 (B.A.P. 9th Cir. 1994). Cases that measure the discovery period from the date of the transfer, without considering the argument that the period should begin to run upon discovery of

9

b. Even if the statute were read literally, such that the one year period began to run when a creditor could reasonably have discovered the transfer, there are unresolved factual questions about when the period began to run. The challenged transfers were mostly money payments from the debtor to the defendants. Establishing when the payments were made is relatively easy; establishing when a creditor could reasonably have learned about those payments is not possible on this record.

c. The factual questions are compounded because, as the trustee correctly argues, section 544(b) of the Bankruptcy Code puts the trustee in the shoes of each individual creditor who could have avoided the transfers under state law. Therefore, the period for the trustee began to run when the <u>last</u> creditor could reasonably have discovered the fraudulent nature of a particular transfer. <u>Picard v. Chais</u> (<u>In re Madoff</u>), 2010 WL 5841402, at *5 (Bankr. S.D. N.Y. Feb. 24, 2011); <u>In re G-I Holdings</u>, 313 B.R. at 639. The record does not permit such an individualized determination.

---

the fraudulent nature of the transfer, are also unenlightening. <u>Blesh v. Johnson</u>, 2006 WL 5838212 (Bt. 2006); <u>Duffy v. Dwyer</u>, 847 A.2d 266 (R.I. 2004); <u>Duran v. Henderson</u>, 71 S.W.2d 833 (Tex. App. 2002); <u>Sandhill Oil Co. v. Ross</u>, 2001 WL 34034445 (Neb. Dist. 2001). The same goes for cases decided under different statutes. <u>Schaefer v. G.R.D. Investments L.L.C.</u>, 331 B.R. 401 (Bankr. N.D. Iowa 2005); <u>In re Mi-Lor Corp.</u>, 233 B.R. 608 (Bankr. D. Mass. 1999); <u>In re Heaper</u>, 214 B.R. 576 (B.A.P. 8th Cir. 1997); <u>Sands v. New Age Family Partnership</u>, 897 P.2d 917 (Colo. App. 1995).

d. There are genuine issues of material fact concerning when the transfers or their fraudulent nature were or could reasonably have been discovered. Therefore, the motions to dismiss and the countermotions for summary judgment are denied as to counts 2, 3, and 4.

7. For essentially the same reasons, I will deny all motions as to count 5. Regardless of whether the six year statute of Haw. Rev. Stat. § 657-1 (to which the discovery rule indisputably pertains) or the doctrine of laches applies, there are genuine issues of material fact concerning the timeliness of the trustee's claims.

* * *

For these reasons, (1) count 1 of the trustee's complaints, based on section 548 of the Bankruptcy Code, is dismissed, (2) the issue of the preclusive effect of the plea agreement will be considered separately, and (3) all motions are denied in all other respects.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 04/25/2011