UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>MAUI INDUSTRIAL LOAN & FINANCE COMPANY,<br><br>      Debtor. | Case No. 10-00235<br>Chapter 7 |
| DANE S. FIELD,<br><br>      Plaintiff,<br><br>vs.<br><br>THOMAS N. DECOITE and RAMSEY DECOITE,<br><br>      Defendants. | Adv. Pro. No. 10-90137<br><br><br><br><br>Re: Docket No. 76, 80 |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS 2, 3, AND 4 AND DEFENDANT'S COUNTER MOTION ON COUNT 6

In this adversary proceeding, the chapter 7 trustee of a company that operated a Ponzi scheme seeks to recover money transferred to the defendants. The plaintiff filed a motion for partial summary judgment against defendant Thomas N. Decoite on October 19, 2012. Mr. Decoite opposed the motion and filed a counter motion. At the hearing on the motion, on November 16, 2012, I permitted the parties to file supplemental documents related to the limited issue of

authentication of evidence.  These documents have been filed and the motion is ready for decision.

I.  FACTS

Mr.  Decoite has been acquainted with Lloyd Kimura since the 1970's.  In the meantime, Mr. Decoite entered into several business transactions with Mr. Kimura and Mr. Kimura's company, Maui Industrial Loan & Finance Company ("MFC").  Mr. Kimura also acted as Mr. Decoite's accountant, bookkeeper, and manager of his financial affairs.  In the 1990s, Mr. Decoite gave significant financial control to Mr. Kimura; he authorized Mr. Kimura to sign checks on his checking account and to deposit checks payable to him, without his endorsement, into one of MFC's checking accounts.

The plaintiff alleges that, between 1999 and 2009, MFC transferred to Mr. Decoite a total of $1,646,945.20.  These transfers fall into three categories.

First, MFC made direct cash transfers to Mr. Decoite, and paid Mr. Decoite's debts and expenses, in a total amount of $532,359.81.

Second, MFC transferred also transferred $1,035,294.01to Mr. Decoite in the form of loans.

Third, MFC released Mr. Decoite from the obligation to pay $79,291.30 in partial satisfaction of a debt which Mr. Kimura (not MFC) owed to Mr. Decoite.

2

U.S. Bankruptcy Court - Hawaii   #10-90137    Dkt # 99   Filed  01/24/13   Page 2 of 16

On January 28, 2010, MFC filed for chapter 7 relief under the Bankruptcy Code and plaintiff Dane S. Field was appointed trustee.

On January 5, 2011, Mr. Kimura pleaded guilty to numerous federal felonies related to a Ponzi scheme and executed a plea agreement. Mr. Kimura admitted that, from 1986 until the date of bankruptcy, MFC, under Mr. Kimura's direction, enticed investors to invest in a Ponzi scheme which promised substantial returns.

The trustee commenced this adversary proceeding on October 18, 2010, to recover as fraudulent the transfers made by MFC to Mr. and Mrs. Decoite as initial transferees. The trustee now seeks partial summary judgment against Mr. Decoite on transfers totaling $1,646.945.20 plus prejudgment interest.

**II. STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). In making this determination, the court views the evidence in the light most favorable to the

nonmoving party and all justifiable inferences are to be drawn in favor of the nonmoving party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

A respondent can object to a motion for summary judgment on the ground that "the material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). If a respondent makes this objection, "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated [at trial]." Id. advisory committee's note (2010). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it could be presented at trial in an admissible form." Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012). "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

### III. DISCUSSION

The trustee seeks partial summary judgment on his claims that the transfers to Mr. Decoite were fraudulent under the Bankruptcy Code, 11 U.S.C. § 544(b)(1) (2006), and the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. § 651C-

4

4(a) (2009) (counts 3 and 4). The trustee further contends that Mr. Decoite is liable for the fraudulent transfers pursuant to 11 U.S.C. § 550(a)(1) (count 2).

    A.    <u>Admissibility of Evidence</u>

        1.    *Exhibit J (promissory note)*

Exhibit J is an unsigned copy of a promissory note by MFC in favor of Mr. Decoite in the amount of $30,000. The trustee offered that exhibit in support of his theory that Mr. Decoite did not take the transfers from MFC in "good faith" because he had information that would have caused a reasonable person to doubt MFC's bona fides. I hold (for the reasons set forth in section E.2 below) that Mr. Decoite did not take the transfers in good faith, but for a different reason to which exhibit J is not relevant. Therefore, I need not decide whether exhibit J is admissible.

        2.    *Exhibits N, O, P, Q, HH, and II (spreadsheets)*

Mr. Decoite objects to the admissibility of certain spreadsheets included in exhibits N, O, P, Q, HH, and II that were prepared by the trustee's counsel. He claims that the spreadsheets are not admissible under Fed. R. Evid. 902(9), which provides that "commercial paper" is self-authenticating. That, however, is not the basis on which the trustee offers the spreadsheets. The spreadsheets summarize, in a convenient form, the checks and related documents that comprise the rest of

5

U.S. Bankruptcy Court - Hawaii   #10-90137   Dkt # 99   Filed  01/24/13   Page 5 of 16

those exhibits. The spreadsheets are best regarded as demonstrative exhibits, not as evidence in and of themselves. If they are viewed as evidentiary, they are admissible as summaries under Fed. R. Evid. 1006.

      3.    *Documents Produced by Mr. Decoite*

Mr. Decoite argues that the trustee has failed to authenticate the documents which the trustee obtained from Mr. Decoite in discovery. Even if Mr. Decoite's possession and production of those documents were insufficient to authenticate them, there is no doubt that the trustee could produce the same documents in admissible form at trial. For example, he could elicit additional testimony from Mr. Decoite; or he could have Lloyd Kimura's wife testify, because she was an officer and director of MFC and has authenticated MFC business records in related adversary proceedings.

      4.    *Authentication by Trustee's Counsel*

Mr. Decoite argues that the trustee's counsel lacks the personal knowledge required to authenticate exhibits. But counsel's declaration states only that some of the exhibits are true copies of originals which are in counsel's possession and others were produced by Mr. Decoite. Counsel has personal knowledge of the facts stated in the declaration.

U.S. Bankruptcy Court - Hawaii   #10-90137   Dkt # 99   Filed 01/24/13   Page 6 of 16

5.  *Copies of Checks*

Mr. Decoite argues that, even if checks are self-authenticating under rule 902(9), copies of checks are not. This argument overlooks rule 1003, which provides that a "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Neither of these qualifications apply, so the check copies are admissible.

6.  *Exhibit K*

Mr. Decoite argues that he did not authenticate exhibit K in his deposition. The trustee offered that exhibit, a copy of an agreement of sale, in support of his second theory about good faith. Because I am not relying on that theory, I need not decide whether the agreement of sale is admissible.

B.  Trustee's Right to Avoid Transfers

Under section 544(b)(1), the plaintiff trustee succeeds to the rights of an actual unsecured creditor existing at the commencement of the case and has the authority to prosecute that creditor's state law fraudulent transfer actions. The trustee need not identify a specific unsecured creditor, as long as an unsecured creditor exists. In re Appleseed's Intermediate Holdings, LLC, 470 B.R. 289 (D. Del. 2012); In re Leonard, 125 F.3d 543, 544 (7th Cir. 1997). Many creditors

7

U.S. Bankruptcy Court - Hawaii   #10-90137   Dkt # 99   Filed  01/24/13   Page 7 of 16

have filed unsecured claims in the underlying bankruptcy case.  See Bk. Case No. 10-00235, Cl. Reg.  The trustee, therefore, has the authority to challenge the alleged transfers under applicable state law.

    C.    <u>Elements of Fraudulent Transfer</u>

The Hawaii Uniform Fraudulent Transfer Act permits the trustee to avoid "a transfer made or obligation incurred by a debtor [that] is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . ."  Haw. Rev. Stat. § 651C-4(a)(1).

The trustee has proven the elements of a fraudulent transfer.  Courts presume that Ponzi scheme operators intend to hinder, delay, or defraud creditors. <u>See</u>, <u>e.g.</u>, <u>Donell v. Kowell</u>, 533 F.3d 762, 770 (9th Cir. 2008); <u>Barclay v. Mackenzie</u>, 525 F.3d 700, 704 (9th Cir. 2008).  Where the organizer admits the existence of a Ponzi scheme in a criminal plea, the presumption becomes conclusive, <u>In re Slatkin</u>, 525 F.3d 805, 814 (9th Cir. 2008), and the bankruptcy trustee need only establish that transfers were made between certain years and for a total certain sum.  <u>In re Thomas</u>, 47 B.R. 27, 31 (Bankr. S.D. Cal. 1984).  Mr. Kimura's plea agreement (dkt. no. 77, ex. A), therefore, conclusively establishes

8

that MFC operated a Ponzi scheme with the intent to hinder, delay, or defraud creditors.

Mr. Decoite argues that Slatkin applies only to "profits" received from a Ponzi scheme. The most precise statement of the holding in the Slatkin opinion is not so narrow:

> We now hold that a debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A) and [applicable state law], and precludes relitigation of that issue.

Slatkin, 525 F.3d at 814. It is true that the trustee in Slatkin sought only to recover profits from the defendants. Id. at 815. Most "investors" in Ponzi scheme cases are liable only for the distributions they received in excess of their initial contribution. But this is not because the Ponzi operator had fraudulent intent when he distributed profits but innocent intent when he returned principal; the essence of a Ponzi scheme is that it is a fraud through and through. Rather, most "investors" are liable only for profits because, under the Uniform Fraudulent Transfers Act (Haw. Rev. Stat. § 651C-8(a) in this case), an intentional fraudulent transfer is not recoverable from someone "who took in good faith and for a reasonably equivalent value." See infra section E.2. Most Ponzi scheme

9

U.S. Bankruptcy Court - Hawaii    #10-90137    Dkt # 99    Filed 01/24/13    Page 9 of 16

"investors" can prove that they acted in good faith – they were just innocent victims of the operator – and their initial "investment" constitutes reasonably equivalent value. In other words, the "investor's" liability is limited, not because the Ponzi operator had fraudulent intent when he distributed profits but not when he returned principal, but rather because most investors can demonstrate their own good faith. The <u>Slatkin</u> court did not have to discuss this distinction because the trustee in that case conceded the defendants' good faith.

The trustee proved that MFC transferred at least $1,646.945.20 to Mr. Decoite.[1] The transfers are fraudulent under 11 U.S.C. § 544(b)(1) and Haw. Rev. Stat. § 651C-4(a).

D.   <u>Limitations Period</u>

The complaint is timely. A claim under section 651C-4(a)(1) must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could

---

[1] Mr. Decoite argues that the trustee's claims must be limited to $540,000 because he and the trustee stipulated to an amended complaint which added a claim for nonpayment of a promissory note and reduced the trustee's fraudulent transfer claims from about $1.2 million to $540,000. The trustee denies that he intended to limit his claims and that the additional amounts were discovered as the trustee continued to investigate MFC's tangled affairs. A bankruptcy trustee can compromise or abandon a claim only with court approval. 11 U.S.C. §§ 363(b)(1), 554; Fed. R. Bankr. P. 9019. The trustee and his counsel are highly experienced and are well aware of these requirements; the fact that they did not seek court approval demonstrates that they did not intend to limit the estate's rights against Mr. Decoite. Even if they had so intended, the lack of court approval means that the estate's rights were not validly limited.

10

reasonably have been discovered by the claimant[.]" Haw. Rev. Stat. § 651C-9(1). The limitations period for the trustee begins to run when the <u>last</u> creditor could reasonably have discovered the fraudulent nature of a particular transfer. <u>Picard v. Chais</u> (<u>In re Madoff</u>), 445 B.R. 206, 220 (Bankr. S.D. N.Y. 2011); <u>In re G-I Holdings</u>, 313 B.R. 612, 639 (Bankr. D. N.J. 2004). For a trustee in bankruptcy, any action in which the limitations period has not expired prior to the filing of a bankruptcy petition is tolled for up to two years after the filing. 11 U.S.C. § 108(a).

The trustee presented evidence that at least one reasonably diligent creditor would not have discovered the fraudulent nature of the transfers until less than one year before the commencement of the bankruptcy case. Dkt. no. 77, exhibits W, Y, AA-GG. Mr. Decoite has offered no contrary evidence.

The limitations period under Haw. Rev. Stat. § 651C-9(1) had not expired as of the date of the bankruptcy filing. The trustee commenced this adversary proceeding less than two years after the bankruptcy filing. The trustee's claims are therefore timely.

    E.    <u>Mr. Decoite's Liability</u>

        1.    *Mr. Decoite as Initial Transferee*

The trustee seeks to recover the avoidable transfers from the defendants

11

pursuant to 11 U.S.C. § 550. This section provides that: "to the extent that a transfer is avoided under section 544 . . ., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from . . . the initial transferee of such transfer . . . or any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1).

Mr. Decoite does not dispute that he is the initial, and only, transferee of the $1,646.945.20 from MFC.

    2.    *Mr. Decoite's Good Faith Defense*

The initial transferee of a transfer avoided under section 651C-4(a)(1) has an affirmative good faith defense: "[a] transfer . . . is not voidable under section 651C-4(a)(1) against a person who took in good faith and for a reasonably equivalent value[.]" Haw. Rev. Stat. § 651C-8(a). Mr. Decoite, as initial transferee, bears the burden of establishing both of these elements. In re Cohen, 199 B.R. 709, 718 (B.A.P. 9th Cir. 1996); Uniform Fraudulent Transfer Act § 8(a) comment 1 ("The person who invokes this defense carries the burden of establishing good faith and the reasonable equivalence of the consideration exchanged.") (emphasis added).

The trustee argues that Mr. Kimura acted as an agent for Mr. Decoite in the management of his financial affairs. As such, there can be no showing of good

U.S. Bankruptcy Court - Hawaii    #10-90137    Dkt # 99    Filed  01/24/13    Page 12 of 16

faith because Mr. Kimura's knowledge of MFC's Ponzi scheme is imputed to Mr. Decoite as principal. Mr. Decoite argues that, although there may have been an agency relationship, that relationship did not encompass MFC's Ponzi scheme. Mr. Kimura's knowledge of that Ponzi scheme, therefore, would not be imputed to Mr. Decoite.

When an agent has knowledge which he has a duty to disclose to his principal, that knowledge is imputed to the principal. Imperial Fin. Corp v. Finance Factors, Ltd., 53 Haw. 203, 206, 490 P.2d 662, 664 (Haw. 1971); see also Restatement (Third) of Agency § 8.11 (2006). Under Hawaii law, an agent has a duty to disclose to his principal any information that is pertinent to the agency and that "the principal would desire to have . . . ." Imperial Fin., 53 Haw at 205, 490 P.2d at 664. Mr. Decoite gave Mr. Kimura extensive control over his finances. Therefore, Mr. Decoite had an excellent reason to know what Mr. Kimura was doing with his money. Any principal would want to know whether his agent had "invested" the principal's money in a Ponzi scheme. Mr. Kimura had a duty to disclose the fact he had transferred Mr. Decoite's money to MFC and had orchestrated a Ponzi scheme through MFC.

None of the exceptions to this imputation rule applies.

An agent is not bound to disclose information to the principal when

U.S. Bankruptcy Court - Hawaii    #10-90137   Dkt # 99   Filed 01/24/13   Page 13 of 16

disclosure would breach a superior duty to a third party, id. at 205, 490 P.2d at 663. Mr. Kimura owed no duty to any third party to keep the MFC Ponzi scheme secret.

An agent's knowledge is not imputed to the principal "if the agent and the third party act in collusion against the principal . . . ." Id.; see also Great Divide Insurance Co v. AOAO Maluna Kai Estates, 2006 WL 2830885, at *6 (D. Haw. 2006). Mr. Decoite does not argue or provide any evidence that this exception applies.

An agent's knowledge is not imputed to the principal when the interests of the agent and the principal are adverse. Id. This exception applies only if "the agent [has] totally abandoned the principal's interest and [is] acting for his own purposes or those of another . . . the interests of the agent must be completely adverse to those of his principal." Id. at *7 (quoting Martin Marietta Corp v. Gould, Inc., 70 F.3d 768, 773 (4th Cir. 1995)). The record does not support a finding that Mr. Kimura completely abandoned the interests of Mr. Decoite. In fact, Mr. Decoite received profits on the investments made to MFC.

Mr. Kimura's knowledge of the Ponzi scheme is imputed to Mr. Decoite. Mr. Decoite, therefore, cannot show he took the transfers in good faith.[2]

---

[2]The trustee also argues that Mr. Decoite had independent knowledge of "red flags" that would have caused a reasonable person to question MFC's bona fides. I need not reach this

14

U.S. Bankruptcy Court - Hawaii    #10-90137    Dkt # 99    Filed  01/24/13    Page 14 of 16

F.   Mr. Decoite's Counter Motion

Mr. Decoite brings a counter motion for summary judgment as to count 6 of the complaint alleging breach of contract. Mr. Decoite points out that Mr. Kimura signed (on behalf of MFC) a release of a mortgage which stated that Mr. Decoite had fully satisfied his debt to MFC under the note and mortgage. The trustee steps into the shoes of MFC and is bound by the statements in its release. The trustee, therefore, cannot prove a breach of contract.

In response, the trustee only argues that the counter motion is inappropriate under LBR 9013-1(d)(1) because the trustee did not seek summary judgment as to count 6 in his original motion. I find that the counter motion does, however, relate to the issues raised in the trustee's motion for partial summary judgment. The trustee's motion argues that the statement in the release was false and that this false statement was one of the "red flags" that should have alerted Mr. Decoite that something was amiss.

Without any further objection, the counter motion is granted. This, however, does not change the amount Mr. Decoite owes to the trustee. Count 6 of the complaint was an alternative theory of recovery; the trustee will still recover the monies transferred under the loan agreements as fraudulent transfers

---

alternative argument.

15

(discussed above).

    G.    <u>Prejudgment Interest</u>

The court has discretion to grant prejudgment interest under state law on the fraudulent transfers from the date each transfer was made. <u>In re Slatkin</u>, 525 F.3d at 820; <u>In re Agricultural Research and Technology Group, Inc.</u>, 916 F.2d 528, 541-42 (9th Cir. 1990). "[P]rejudgment interest should not be thought of as a windfall in any event; it is simply an ingredient of full compensation that corrects judgments for the time value of money." <u>Donell</u>, 533 F.3d at 772 (quoting <u>In re P.A. Bergner & Co.</u>, 140 F.3d 1111, 1123 (7th Cir. 1998)).

The trustee should recover pre-judgment interest at the Hawaii rate of 10 percent per annum from the date on which the transfers were made. Haw. Rev. Stat. § 636-16; <u>Donell</u>, 533 F.3d at 772; <u>Eastman v. McGowan</u>, 86 Hawai'i 21, 28, 946 P.2d 1317, 1324 (1997).

* * *

For these reasons, the trustee's motion for partial summary judgment is granted.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 01/24/2013